Good morning. Kara Hartzler, Federal Defenders for Mr. Bayardo. Mr. Bayardo's expedited removal proceedings were the legal equivalent of pleading guilty to a crime when you don't even know you've been indicted. The immigration officer at the port of entry did not advise Mr. Bayardo that he was being formally deported, did not tell him the particular legal charges against him, and did not even give him a chance to read these charges. Because this violated due process, Mr. Bayardo's prior removal order cannot be used to sustain a conviction for illegal reentry. While there were multiple due process violations here, the most obvious, and the one that I would like to focus on, is the due process violation that the immigration officer did not advise Mr. Bayardo of the specific legal charges against him. Now, the regulations explicitly state that the examining immigration officer shall advise the alien of the charges against him and the alien shall be given an opportunity to respond. But here the officer's testimony confirmed that it was not, in fact, his general practice to advise non-citizens of the specific charges against them. And all of the evidence in the record indicates that Mr. Bayardo was never advised of these charges, that he had a false claim to citizenship, and that he did not have entry documents to enter the United States. Now ---- Is that information contained on the tape that he was shown, or is that in dispute? No, Your Honor. There was no tape in this situation because it was an expedited removal, but it is ---- appears in two places in the record. First, during the evidentiary hearing, there was an officer who testified that he didn't specifically remember the facts of Mr. Bayardo's case, but he testified as to his general practice and how he would conduct these expedited removal proceedings. And in that testimony, he stated that he did not actually advise people of the charges against them. He just went through the sworn statement, told them to sign things, and he also mentioned a video that was played. The other place ---- That's what I meant by tape, the video. The videotape, yes. I apologize, Your Honor. The videotape is the tape that was allegedly played in the lobby that people would supposedly watch before they went in to talk to the examining immigration officer. Now, in the tape, first of all, we don't even know what the tape says. We don't have a copy of the tape. But even assuming that we go along with the officer's testimony, which was the tape basically read the first four paragraphs of the sworn statement, that still is not an advisal of the specific legal charges against Mr. Bayardo. So even assuming exactly what the officer said, no evidence in the record shows that he was advised of the charges against him. He had to be advised that he was being charged with a false claim to citizenship and that he was being charged with not having documents to enter the United States. Well, the officer thought that the movie that they watched would take care of it. That's where they got the advice. And I think that that's exactly where the district court got off track here, Your Honor. Because while it appears that even assuming that the videotape said what the officer said it did, it had no information regarding the specific charges against Mr. Bayardo, the false claim to citizenship and the entry without documents. So even assuming everything is right, that's still not good enough. And I would refer back to the regulations, which state that the examining officer shall advise the alien of the charges against him. Now, if, for instance, you had a group of people who were doing an initial appearance in criminal court, and you told them, all right, well, you are being charged with robbery or drugs or burglary or theft or fraud, that's just not good enough. It's not good enough. What about the statement, you do not appear to be admissible or to have the required legal papers authorizing your admission to the United States? Is that not sufficient? That's not sufficient, Your Honor. Even assuming that that would advise him of one of the charges, which is that he did not have lawful entry documents, there's nothing in those paragraphs that talked about the false claim to citizenship. And that's, I think, where the district court got off track, because it believed that just that video telling Mr. Bayardo you are inadmissible is good enough, but it's not good enough. There are multiple grounds. There's over 100 grounds of inadmissibility in the Immigration and Nationality Act. The regulations require that Mr. Bayardo be advised of the specific charges against him, and he was not here. Now, why does that matter? Because I know a lot of times it seems like we're really nitpicking some of these things. The reason it matters is because specifically with a false claim to citizenship, the consequences of that are extremely severe. A person who allegedly has a false claim to citizenship can never get status in the United States ever again. The other reason it's important is because unlike certain other grounds of inadmissibility that, for instance, are based on a conviction, a false claim to citizenship is actually something that transpires between two people in a room, and it's subject to misinterpretation, language barriers, miscommunication, legal arguments. For instance, there would be an argument, sir? That would be true if they subsequently charged him with a false claim to citizenship, but it was enough to remove him that he didn't have papers, and that would have not given him a bar for life, but that's a five-year bar, isn't it? That is a five-year bar to just say that you don't have papers, but here the document shows that he explicitly was charged with a false claim to citizenship. It wasn't as though he was brought on separate criminal charges. It was the ground of inadmissibility for a false claim to citizenship. As far as this case is concerned, he could be removed on the one ground, and then he'd be barred for five years, and so now he's being prosecuted for reentry after a deportation based on a false claim to citizenship. I mean, I'm sorry, the opposite, after being removed from being not having papers. He was actually removed for two reasons, for not having paper and for the false claim. But suppose the second claim is wrong, that they couldn't rely on the second ground. How would that affect this case? Well, Your Honor, at this stage, we're only dealing with a due process violation. The district court did not get to prejudice. So all we need is the one false claim, and we've got it. If this court believes that that was a due process violation, then it can certainly be. It's only a due process violation if it's prejudice. Correct, Your Honor. And so this court could remand for prejudice because the district court didn't reach it below, or the court could proceed to decide it. Now, I believe what Your Honor is getting to is the issue of was there a due process violation, a second due process violation on the basis of the fact that he did not have entry documents. We still believe that that's a due process violation because, as I mentioned before, we still don't know what was on that video. We don't know for sure that Mr. Bayardo-Garcia watched it, and we know that what the officer's testimony established is that he would just ask the person questions and then tell him to sign forms. So there's no evidence in the record that Mr. Bayardo was ever advised of that charge either. So we only need the false claim due process violation, but even if we didn't have that, the second one would also be a due process violation. On the second one. Yes. If the officer had testified that what's on the video is the material in the first portion of the form, would that have been enough? No, Your Honor, because the regulations also say that it has to be the examining immigration officer who advises him. So just having a video do it is not good enough. With that, unless the Court has any more questions right now, I'd like to reserve the rest of my time. That's where it says the examining immigration officer shall read or have read to the alien all information contained on form I-86-7A. Correct, Your Honor. There's also in the regulation the statement, the examining immigration officer shall advise the alien of the charges against him. Against him or her. Him or her. Yes, Your Honor. Thank you. On form I-860, and the alien shall be given an opportunity to respond. Is there any authority, whether by analogy or otherwise, that where the regulation or statute requires an advisement that videotape advisements would be insufficient as a matter of law? Well, we would argue, Your Honor, that because the regulation uses the word the examining immigration officer, here the officer who was the examining immigration officer did not advise him of that. And so a video just seems to violate the plain language of the regulation. So the answer to the question, is there any authority, is no. No. No, Your Honor. Thank you. So he has how many children does he? He has eight United States citizen children. And he had 38 years in the United States at the time of his removal. The remedy that you've asked for, assuming that the advisement was inadequate, is a remand for the prejudice determination by the district judge? Yes, Your Honor. We believe that remand would be appropriate for prejudice determination if this Court determines that it does not want to reach the prejudice issue. And if we were to reach the prejudice issue? If you were to reach the prejudice issue, we believe that this is certainly a plausible case because of all of his equities, his eight U.S. citizen children, his 38 years in the United States, and the fact that he had a United States citizen wife who could have filed a petition for him. Was he supporting his family? He was absolutely supporting his family at the time, Your Honor. What work was he doing? I am not familiar with what work he was doing, Your Honor. I apologize. All right, thank you. Thank you. Thank you, Your Honor. This is David Finn on behalf of the United States. I think Senator Reinhart is absolutely correct that the second paragraph on Excerpt of Record No. 21 in the sworn statement that was read in the video advised the defendant, the appellant, of the charges against him. The statement is, You do not appear to be admissible or to have the required legal papers authorizing your admission into the United States. The testimony from Officer Echichuri at the 1326D evidentiary hearing, he was asked specifically, was all that information part of the video? And Excerpt of Record Page 70, the officer answers, yes. To the best of my recollection, all of that information was read as part of the video. You didn't put in a transcript. There was no videotape that was marked as an exhibit and presented to the district court. And so I don't have a problem with witnesses testifying to general custom practice and procedure because there are legitimate inferences that can be drawn for that and recognizing that we have to respect the factual findings or view with deference the factual findings by the district court. My problem with the record in this particular case is that the witness recollection was very sketchy as to exactly what was on that videotape. Now, on direct examination, the witness did say, to the best of my recollection, it was all on the videotape, but there was some probing and he couldn't quite recall which of the advisements were actually on the videotape and whether something's excluded. So why should we have confidence in this record? Because that's the same concern that the district court, Judge Battaglia, had. When he went back and he asked that specific question to the witness, and it's Excerpt of Record Page 77, and Judge Battaglia, who also saw that direct examination, was unclear and said, is all that information on the video advisal? And the witness replied, yes. All right, well, let me read you a section of the court's question and the answer from Excerpt of Record Page 78. The court, okay, what about the statement after that? Any statement you make may be used against you, et cetera. Do you have any recollection today if that was on the tape or something you said? The witness, no, I don't have a recollection that that was on the tape, and I don't know if that is something that I said. Was there any other point in the hearing when the witness clarified or explained that equivocation further? Or was that the state of the record? That's the state of the record, Your Honor, yes. So he does say, first he says, all of that is not in the video, to the best of my recollection, and then when he's asking that question, then he's kind of, you know, he can't quote the video. This is, we're talking about an event that happened 13 years prior to the hearing, and this officer was working at that port of entry for about three or four years, and we're asking him to quote from the video that was shown to the people. He can't do it. Well, I've got a problem for you, because you needed to show that the advisements were actually given, whether it's by custom and practice or by a transcript of the video, the video itself, and it doesn't seem to me that you have quite done that. So why isn't that a problem, the portion of the transcript that I just read to you? Well, on the clear air review, I think that we can look at the two portions where he does very clearly say that it's all in there. Those portions of the sworn statement are read in the video advisal. So he says that in two points, and then later on he's kind of wishy-washy about whether specific questions, can he remember whether specific questions. Generally, yes, answer to something, and then when you're questioned about the details, and you say, well, I don't know, I don't remember, you know, those are the things that are important. Just to have a general impression of what it is isn't very set. It would be fine if that's the state of the record, but if I'm questioned about what his memory really is, he just has a general impression, and it does seem to be a problem. If you can't rely on that 13 years later because nobody kept a record and we really don't know, maybe you don't succeed in one case, which wouldn't be the end of the world. And I agree that it's hard for something that happened 13 years ago to say what exactly happened. I think the officer is giving his best recollection. He's saying it's our custom and practice. This is how we did it. The stuff that's in the sworn statement. This is how we did it. It's our custom and practice to show this tape, which I think generally contains what we needed to do, but I'm really not sure what it did contain. It's understandable why he didn't understand and be sure, but it's a pretty important decision to send somebody to prison for just, I think, as I recall, he went to visit his dying mother or his ill mother, if that's not another one of these people. But is that this case? That was his explanation. He's had eight children. He went to visit his dying mother, and we want to send him to prison. You know, you've got to be pretty sure exactly before you do that. And you can't say, well, we're not really sure because it was 13 years ago. Well, if you're not really sure, then he doesn't go to prison for doing something that's not. I shouldn't say this, I suppose, because some might think it's one of the worst crimes in the world. But it's something that I think you could live with. You could even say that's right. What I think. I'm not asking you to. Thank you. I think we have to look at the whole record on our clear review. And what the officer is essentially saying is I don't read those first three paragraphs of the sworn statement because it's my understanding that's done in the video advisal. So they do that in the video advisal, and then they come to me. And that makes sense. In a way, you can imagine the. It makes sense, but we don't know what was in the video advisal. Well, he's saying that. Yes, because that's what he thinks. But when asked specifically, he really doesn't know. And it's perfectly understandable. Look, I'm sure there are a lot, big crowds, because these videos per the officer's testimony are played to groups of 30 people or more at a time. So rather than individually going through all of the advisals with every undocumented person that crosses, they'll put them all in the room and then play the video, and that would save the officer time from having to individually go through each advisement. But the problem is he doesn't remember whether all of the required advisals were actually contained in this particular video. I don't have any quarrel with that. That seems perfectly natural that he wouldn't remember it. And I don't know if you know the answer to this, but is there still a copy of the videotape? Do you think that the agency, if it relies on these sort of customs and practices, if it updates the video, that somewhere they keep a copy of the old one? I don't know if any inquiries were made in an attempt to discover that. No, and you raise a good point, because I think while I'll admit that there's some ambiguity in the officer's testimony about what he remembers 13 years ago, it goes the other way, too. The defendant submitted a sworn declaration in which he says, oh, they didn't read the sworn statement back to me, I just signed a bunch of paperwork. But nowhere in his sworn statement does he say, I wasn't advised of the charges against me. He never makes that claim. They drafted the declaration, they submitted it to the court, challenging the due process errors, and they never made that specific claim. So the government wasn't on any kind of notice that that was exactly what he was claiming, that he's, in fact, claiming that nobody actually told him why he was being in proceedings. It's just not there. It's not in his declaration, and it's in the argument. He does say that the immigration inspector did not explain to me what the process was called, or that I was in formal removal proceedings. Now, to say, well, he didn't say that I wasn't shown a video, or he didn't say that they sent me a letter that said it, or he didn't say I knew it anyway, it seems to me that a reasonable inference from the fact that he didn't tell me about it is that I wasn't told about it. Well, it's his declaration, and we shouldn't be here making inferences and trying to read between the lines of what he meant. He's very specific in saying he didn't tell me what the process was called, and that's telling, because he could be just as specific to say, and he didn't tell me why I was being removed. Okay. So if he said he didn't tell me why, he would have had to say, and his secretary didn't tell me why, or no other person told me why. I think, you know, it's a reasonable inference. You'd like us to draw some inferences. But it's a little more difficult to say that we should send somebody to prison for having committed a serious crime because his affidavit was he didn't tell me about it when he was supposed to tell me about it under the regulation. Now, we're willing to let them use a video, I assume, and so we're willing to say, well, literally, he doesn't have to do it himself. But the regulation was he was supposed to tell him. And so we're willing to stretch it to say, well, he doesn't really have to do it. He can do it by video. But now you want us to do the opposite when he says he didn't tell me. He didn't do what the regulation says. And you say, well, he didn't say, even though he didn't do what he was supposed to do, he didn't say that he didn't show me a video. I think that's asking a bit much in a criminal conviction. Can I respond? I'm out of time. Yes, certainly. But let me ask you one question. Is this the issue we really have to decide? Is this what the case is about? I mean, your opponent started out with a much broader theory about not having the other second charge involved. There are a lot of other things we've talked about. But it does come down, as I understand it, to this issue of debate. Yes. To respond to your question. Now you want to respond to the question. Thank you. The problem I think that we're having with the assuming in his declaration that that's what he meant, that I wasn't advised, is that he also makes other statements in the declaration, which District Judge Battaglia found were specifically disproven by the officer's testimony. So at the end, essentially, Judge Battaglia is making credibility finding. He's saying, look, you also said in your declaration that he didn't review the forms with you and you just signed them. In fact, the officer testified as I went through the question and answer each one with him, and then he initialed the pages. So Judge Battaglia was already making credibility finding that, look, already stuff that you said in your declaration has been proven to be false. But did he say I make a general credibility finding that everything you have said is false? He says something to the effect that just because you say now, the attorney says on record now, that he wasn't advised of the charges, that doesn't mean, that that doesn't overcome the officer's testimony that, in fact, he was advised of the charges. How many people were in the room where the video was displayed at one time? The officer testified it could have been up to 30. Up to 30? Yes. Okay. Thank you, Your Honor. Thank you. You don't need to if you don't. Just don't look cowed. He likes to talk. I do like to talk. I know, but that doesn't mean it's a good idea. She has something to say. I think I'll restrain. All right. That is better. Thank you.
judges: Pregerson, Reinhardt, Nguyen